UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


**Jay Neeper**

    **v.**                                   Case No. 11-cv-135-PB
                                            Opinion No. 2011 DNH 172

**Richard M. Gerry, Warden,**
**New Hampshire State Prison**


## MEMORANDUM AND ORDER

Jay Neeper was convicted of aggravated felonious sexual assault and sentenced to a term of six to fifteen years in the New Hampshire State Prison ("NHSP").  His conviction was affirmed by the New Hampshire Supreme Court on March 25, 2010.  On March 22, 2011, Neeper filed a petition for a writ of habeas corpus in this court, arguing that the state trial court violated his rights under the Fifth and Fourteenth Amendments by failing to declare a mistrial when the prosecutor made references to Neeper's silence after being given Miranda warnings.  Richard Gerry, Warden of NHSP, moves for summary judgment.  Neeper objects and cross-moves for summary judgment.  For the reasons discussed below, I grant the Warden's motion.

## I.   <u>BACKGROUND</u>[1]

### A.   <u>The Assault</u>

Neeper's 14-year-old daughter and the 12-year-old victim were friends on the same cheerleading squad.  The daughter, a diabetic, was required to test her blood sugar several times a day with a diabetes monitor.

On February 16, 2007, the victim slept over at Neeper's two-bedroom apartment in Barrington, New Hampshire, where the daughter was living at the time.  The daughter and the victim practiced their cheerleading routines in the daughter's bedroom, and then went to sleep.  Neeper and his nine-year-old son slept in the living room.  The victim testified that she woke up at around 2:00 a.m. because she felt Neeper's hand "rubbing and patting" her vagina.  The victim woke the daughter, and Neeper left the girls' room.

The daughter immediately confronted Neeper and accused him of sexually assaulting the victim.  Neeper stated that he did not know what she was talking about, got up, and left the room.  The daughter then told Neeper that she and the victim were leaving. In spite of the late hour, Neeper did not object or ask where

---

[1] The facts of the case are largely taken from <u>State v. Neeper</u>, 160 N.H. 11 (2010).  Certain details have been filled in by consulting the motions of the two parties.

they were going.  The daughter and the victim left the apartment

and called Neeper's brother, Brett, who came to pick them up.

Brett flagged down Officer Jared Welman, a Lee police officer,

and they all went to the Lee police station to be interviewed.

Officer Welman called the Barrington Police Department, and

Barrington Officer Christopher Plummer came to Lee to assist.

      At approximately 5:00 or 6:00 a.m., Officer Welman, Officer

Plummer, and Brett went to Neeper's apartment to pick up Neeper's

son and take him to stay with Brett.  Officer Plummer explained

that the police were there to talk to him because they found his

daughter and the victim walking down Route 4.  In response,

Neeper explained that he had argued with his daughter because the

victim refused to call her mother and the girls refused to go to

sleep, and that afterwards, she and the victim left.  He also

stated that, before they left, "[t]hey accused me of . . . ."  He

stopped talking, however, before finishing the sentence.  Neeper

then helped Officer Plummer gather some of the daughter's and

victim's possessions, and did not object to his son staying with

Brett.

      The following day, February 18, Lieutenant Jacob Banaian of

the Barrington Police Department took Neeper into custody.  At

the police station, Lieutenant Banaian read the charges to Neeper

and, although he did not read Neeper his <u>Miranda</u> rights, showed

Neeper a "rights form" which contained the warnings.  At that
point, Neeper stated, "I don't understand what is going on, so I
would like an attorney."  Lieutenant Banaian did not ask any
further questions.

**B.    The State's Direct Examination of Lieutenant Banaian**

At trial, on direct examination, the prosecutor asked
Lieutenant Banaian whether Neeper had attempted to contact him or
the Barrington police after his daughter and the victim had left
in the middle of the night.  Lieutenant Banaian stated that
Neeper had not.  Neeper objected and the trial court overruled
the objection.  Lieutenant Banaian then testified about Neeper's
arrest on February 18.  At that point, the following exchange
occurred between the prosecutor and Lieutenant Banaian:

> Q. Okay.  And what did he say in response to you reading the
> charge involving [the victim]?
>
> A. He said he did not understand.
>
> Q. Okay.
>
> A. And that . . .
>
> Q. And at that point, you—there were no further questions
> asked, correct?
>
> A. Right.  He said he did not understand, he would like to
> talk with an attorney, so there were no further questions.

Neeper objected and moved for a mistrial.  The court held a
hearing outside of the presence of the jury.  During the hearing,

Neeper introduced a copy of Lieutenant Banaian's police report, which recounted Neeper's arrest and subsequent discussions with Lieutenant Banaian.

The court found that the testimony at issue was " Doyle-like" but that the prosecutor did not engage in any misconduct. See Doyle v. Ohio, 426 U.S. 610 (1976).  The court also found that there was "a little bit of a trail within the records that lead up to [Lieutenant Banaian's comment]."  The court denied Neeper's motion for a mistrial and issued a curative instruction to the jury to "disregard the . . . last two questions from the State and the lieutenant's answers to them," and, in particular, the references to Neeper having exercised his constitutional rights.  The court instructed the jury that it could not "draw an inference as to guilt or innocence" based upon the fact that Neeper exercised his rights, and emphasized the importance of compliance with the instruction.  The court then asked the jurors to indicate "by a show of hands" whether they could disregard Lieutenant Banaian's answer.  The court asked the jurors whether they could "appreciate . . . the principles of constitutional law," and they all responded that they could.

### C.    Neeper's Testimony and the State's Closing Argument

Neeper testified and offered an explanation of his conduct that night.  He said his daughter kept her diabetes monitor on the front of the bed because he routinely checked it at night. He also testified that she did not know that he checked her monitor at night.  Neeper stated that he and his daughter frequently argued about how she monitored her diabetes, and that her blood sugar levels were high on the night the victim slept over.  Neeper testified that he went into her bedroom to check her monitor after she and the victim fell asleep.  He further testified that he could not find the monitor and, when someone started moving, he left to avoid a confrontation with his daughter.  Neeper stated that his daughter yelled at him and "accused [him] of a bunch of stuff."  He testified that he did not stop her from leaving the apartment because a therapist had recommended that he manage her outbursts by letting her "go for a walk and cool down."  His daughter, however, testified that Neeper never checked her diabetes monitor, and that they had not discussed her blood sugar on the night of the assault.

During the prosecutor's closing argument, he discussed Neeper's testimony regarding checking his daughter's diabetes monitor, and asserted that Neeper "never told anyone" his exculpatory story.  At the conclusion of the closing argument,

Neeper renewed his request for a mistrial, contending that the prosecutor's argument encompassed his post-arrest silence.  The court implicitly denied Neeper's motion.

**D.   Neeper's Direct Appeal**

Neeper appealed his conviction to the New Hampshire Supreme Court, arguing that the prosecutor improperly elicited testimony that he invoked his constitutional rights post-arrest and after receiving Miranda warnings.  Neeper further argued that the prosecutor wrongly commented on that testimony when he asserted in his closing argument that Neeper "never told anyone" his exculpatory story.  The supreme court affirmed Neeper's conviction, holding that although some of the prosecutor's questions leading up to Lieutenant Banaian's remark were "troublesome," the prosecutor's question at issue did not seek to elicit testimony about Neeper's post-Miranda silence.  State v. Neeper, 160 N.H. 11, 16 (2010).  The court further held that any prejudice was alleviated by the trial court's curative instruction.  Id.  In addition, the court held that the prosecutor's remark during his closing argument that Neeper "'never told anyone' refers to his statements immediately following the assault and not his post-Miranda silence."  Id. at 17.  The court therefore concluded that Neeper's due process rights had not been violated under New Hampshire's state

constitution.[2]

Neeper subsequently filed the habeas corpus petition that is the subject of the cross-motions for summary judgment.  I consider the parties' arguments below.

## II.  STANDARD OF REVIEW

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a federal court cannot grant habeas relief with respect to a claim that was adjudicated on the merits in state court unless adjudication of the claim resulted in a decision that (i) "was contrary to" clearly established federal law, as determined by the Supreme Court of the United States, (ii) involved an "unreasonable application of" clearly established federal law, or (iii) was based on an "unreasonable determination of the facts in light of the evidence presented in the State

---

[2] Although the court addressed Neeper's claims under the state constitution, I analyze his habeas corpus petition as if the court had decided his case under federal law.  If the state court does not expressly apply a federal standard but rather resolves an issue under a state law standard that is identical to or more favorable to the defendant than the federal standard, the reviewing court "will presume the federal law adjudication to be subsumed within the state law adjudication."  Teti v. Bender, 507 F.3d 50, 56 (1st Cir. 2007) (quoting McCambridge v. Hall, 303 F.3d 24, 35 (1st Cir. 2002)).  This is the case here.

court proceeding."   28 U.S.C. § 2254(d).[3]

### III.  ANALYSIS

Neeper argues that the New Hampshire Supreme Court's decision affirming his conviction was "contrary to" and "an unreasonable application of" clearly established federal law.  In support, he contends that the prosecutor's examination of Lieutenant Banaian and his reference during closing argument to Neeper having "never told anyone" about his exculpatory story violated the law set forth in Doyle, that a prosecutor may not use a defendant's post-Miranda silence against him at trial. Neeper further argues that the court's decision was based on an "unreasonable determination of the facts" because it incorrectly concluded that the prosecutor's closing argument did not encompass Neeper's post-Miranda silence.

The United States Supreme Court has held that the Due Process Clause of the Fourteenth Amendment forbids impeachment of a defendant at trial for choosing to remain silent after Miranda

---

[3] This deferential standard of review applies to all claims that were "adjudicated on the merits" in state court.  28 U.S.C. § 2254(d).  "If the federal claim was never addressed by the state court, federal review is de novo."  Pike v. Guarino, 492 F.3d 61, 67 (1st Cir. 2007).  Here, the state court adjudicated Neeper's claim on the merits, and therefore, I apply the deferential standard of review.

warnings had been given.  Doyle, 426 U.S. at 611.  In Wainwright

v. Greenfield, 474 U.S. 284, 292 (1986), the Supreme Court found

that Doyle was premised on an implied constitutional promise that

a defendant's post-arrest silence would not result in his being

penalized.  See also Doyle, 426 U.S. at 619 ("[I]t does not

comport with due process to permit the prosecution during the

trial to call attention to [the defendant's] silence[.]"

(quotation marks and citation omitted)).

      Although Doyle protects a defendant against the use of his

post-Miranda silence against him, "mere reference to a

defendant's post-Miranda silence does not necessarily amount to a

due process violation."  Ellen v. Brady, 475 F.3d 5, 10 (1st Cir.

2007).  "[I]n cases where a prosecutor refers to the defendant's

post-Miranda silence in a question to a witness or a statement to

the jury, or elicits testimony about such silence from a witness,

and the offending question, statement or testimony is promptly

addressed by the court, in an instruction to disregard and/or

strike from the record, there may not necessarily be a Doyle

violation because the government has not been permitted to 'use'

the defendant's silence against him."  Id. at 11 (discussing

Greer v. Miller, 483 U.S. 756, 764-65 (1987)).  Nor does the

Constitution prohibit a prosecutor's use of a defendant's silence

prior to arrest.  Brecht v. Abrahamson, 507 U.S. 619, 628 (1993).

These decisions comprise the backbone of established federal
law governing the state's use at trial of a defendant's post-
Miranda silence.  I now address whether the New Hampshire Supreme
Court's decision was contrary to or an unreasonable application
of that law, and whether the court made an unreasonable
determination of fact.

A.   **"Contrary to" Federal Law**

I must first determine whether the state court's decision
was contrary to relevant Supreme Court precedent.  A state court
decision is "contrary to" established Supreme Court precedent if
either the state court reaches a conclusion on a question of law
"diametrically different" from that reached by the Supreme Court,
or a state court "confronts a set of facts that are materially
indistinguishable" from relevant Supreme Court precedent and
reaches an opposite result.  Williams v. Taylor, 529 U.S. 362,
405-06 (2000).

Given the limited standard of review I must apply under §
2254(d), I conclude that the state court's decision was not
"contrary to" Supreme Court precedent.  The New Hampshire Supreme
Court specifically discussed Doyle and applied the rule announced
therein.  Neeper, 160 N.H. at 14 ("Accordingly, the State may not
use the defendant's silence in response to [Miranda] warnings to
impeach the defendant's credibility, or . . . in its case-in-

11

chief as substantive evidence of the defendant's guilt."
(internal quotation marks and citations omitted)).  Neeper's
argument, that the state court held that the prosecutor was
allowed to use Neeper's post-Miranda silence as argument, is
unavailing.  The court accurately stated the governing law
through its reliance on Doyle and its progeny.  Therefore,
viewing the record in the light most favorable to Neeper, I do
not find that the state court's decision was "contrary to"
established federal law.

**B.    "Unreasonable Application" of Federal Law**

If the state court's decision was not contrary to Supreme
Court precedent, I must then ascertain whether its decision
involved an objectively unreasonable application of clearly
established federal law, as determined by the Supreme Court.  See
Williams, 529 U.S. at 406-09.  A state court decision is an
"unreasonable application" of clearly established federal law if
the state court (i) "identifies the correct governing legal rule
from [the Supreme Court's] cases but unreasonably applies it to
the facts" of a prisoner's case, (ii) "unreasonably extends a
legal principle from [the Supreme Court's] precedent to a new
context where it should not apply" or (iii) "unreasonably refuses
to extend that principle to a new context where it should apply."
Id. at 407; see L'Abbe v. DiPaolo, 311 F.3d 93, 96 (1st Cir.

2002).  In order to meet this standard, the state court's
application of law must contain "some increment of incorrectness
beyond error . . . .  The increment need not necessarily be
great, but it must be great enough to make the decision
unreasonable in the independent and objective judgment of the
federal court."  McCambridge, 303 F.3d at 36 (internal quotation
marks and citation omitted).

As discussed above, the state court identified the correct
legal principle from Doyle and its progeny.  I do not find that
the court unreasonably applied that principle to this case.  As
in Greer, the court here sustained an objection to testimony that
raised a Doyle issue, and gave a curative instruction to the jury
explaining that it could not draw an adverse inference from
Neeper's silence or give Lieutenant Banaian's testimony on that
issue any weight.  See Greer, 483 U.S. at 767 n.8 ("We normally
presume that a jury will follow an instruction to disregard
inadmissible evidence inadvertently presented to it, unless there
is an overwhelming probability that the jury will be unable to
follow the court's instructions." (internal quotation marks and
citations omitted)); see also United States v. Andujar-Basco, 488
F.3d 549, 561 (1st Cir. 2007); Ellen, 475 F.3d at 11.  The court
found that Lieutenant Banaian's testimony was the only reference
to Neeper's post-Miranda silence, and that the trial court

13

explicitly did not permit the inquiry that <u>Doyle</u> forbids.[4]

The court properly applied the principles set forth in <u>Doyle</u> and related precedent.  Therefore, viewing the record in the light most favorable to Neeper, I do not find that the state court's decision was an "unreasonable application of" established federal law.

## C.    **"Unreasonable Determination" of Facts**

If the state court's decision was consistent with clearly established federal law, I then evaluate the reasonableness of the state court's factual findings.  Neeper challenges the state court's determination that the prosecutor's comment during closing argument that Neeper "never told anyone" about his exculpatory story referred to his statements immediately following the assault, and not his post-<u>Miranda</u> silence.

Determinations of fact made by the state court, including witness credibility and recitals of external events, are presumed to be correct; the petitioner has the burden of rebutting this presumption of correctness by clear and convincing evidence.  28

---

[4] Neeper challenges the state court's analysis of both Lieutenant Banaian's testimony and the prosecutor's remarks during closing argument as "contrary to" and an "unreasonable application of" federal law.  Because the state court held that the prosecutor's closing argument did not refer to Neeper's post-<u>Miranda</u> silence, however, Neeper's contention regarding this point is better addressed under his "unreasonable determination of" facts argument.

U.S.C. § 2254(e)(1); see also Sleeper v. Spencer, 510 F.3d 32, 38 (1st Cir. 2007). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable-a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 473 (2007). "The 'presumption of correctness is equally applicable when a state appellate court, as opposed to a state trial court, makes the findings of fact.'" Norton v. Spencer, 351 F.3d 1, 6 (1st Cir. 2003) (quoting Sumner v. Mata, 455 U.S. 591, 593 (1982)).

An examination of the record shows that the state court's factual determination is not unreasonable. The prosecutor's remarks preceding the comment at issue were focused almost entirely on the early morning following the assault, February 17, and Neeper's discussions with his daughter and Officer Plummer. Neeper was not placed under arrest or given Miranda warnings until the following day.[5] There is no basis on which to disturb the state court's determination of fact. Therefore, viewing the record in the light most favorable to Neeper, I do not find that the state court's factual findings were unreasonable.

---

[5] Under Brecht, the prosecutor's comments regarding Neeper's pre-arrest silence were not improper. See Brecht, 507 U.S. at 628.

Accordingly, as a matter of habeas review under the AEDPA standard, the Warden is entitled to summary judgment with respect to Neeper's claim in his petition.

## IV.   <u>CONCLUSION</u>

For the reasons set forth herein, I grant the Warden's motion for summary judgment (Doc. No. 6) and deny Neeper's motion for summary judgment (Doc. No. 7).  The clerk is directed to enter judgment and close the case.

SO ORDERED.

<u>/s/ Paul Barbadoro</u>
Paul Barbadoro
United States District Judge

October 18, 2011

cc:  Stephanie Hausman, Esq.
     Elizabeth Woodcock, Esq.